In this court, my name is Cameron Morgan and I represent Manuela Villa. I'm the State Petitioner. I'm sorry, I'm the plaintiff. I'm a Las Vegas District Court of Arrest and I'm here for CWG 412. There are two problems that we would put forth in the complaint concerning the Arizona wiretap statute. First of all, it allows the delegation's authority to assist and dispute attorneys to both authorize and apply for wiretaps. And second, the statute itself, through its practices, requires that the wiretap communications be seen immediately. The determination required to have a first and most likely condition is disability in court on the immediate scene. Now, the court has asked us to address Article 3 standing in this matter. I'd like to turn to that next. And just with respect to the prospective earlier issue, you've asked us to address L.A. v. Lyons with an assault case under 42 U.S.C. 1983 when a Razzle v. Cajun taxpayer teacher enacted a case in New York City. I've submitted pursuant to Rule 28J, Trouble v. NSA, which I think you should probably have now. And I would suggest that there are two other cases you should consider. First, Riverside v. McLaughlin, 500 U.S. 44, a case that looks likely to have probable cause determinations under Riverside County Court. And as they help you organize your response, what's concerning me about this is, and it's exemplified in Lyons' case, if something has happened to you that may not happen again, the likelihood of the recurrence is going to be relevant to whether or not you can get an injunction. And what the court held in Lyons' class, the likelihood of this individual again being subjected to a chokehold that is potentially illegal is so small that that person does not run a court to be standing to seek the injunction. Lyons has standing to seek the damages, but not injunctions. So the question that Lyons gives us is, how likely is it that this individual will be subjected to this kind of wiretap surveillance? Do you intend to assume it will be? Your Honor, I would answer that by saying we've requested class certification. That class being all persons who have been illegally intercepted or subject to these orders. Do you intend to assume that? We have a case file that says the main plaintiff has the abhorrent complete standing. It is not sufficient that there might be some members of the class who statistically will be subjected to it. So the question remains, what's your standing from your second belief? Judge, I think she clearly has standing with respect to damages under the statute. Your Honor, your question only goes to prospective relief. Yes, ma'am. Your Honor, with respect to declaratory injunctive relief on the first issue of the delegation of authority, since we don't know, well, first of all, it is an innocent case. But the class itself can also provide the necessary articles to a standing under Riverside v. Oklahoma, the Friends of the Earth v. Lake Law and Environmental Services. We know that the Maricopa County Superior Court is going to allow these W county attorneys to continue to authorize and apply for wiretaps. They have issued their decisions in that regard. And we also know that they're not going to require that these be immediately sealed. And those are the procedures that will continue to follow. Whether she will actually be wiretapped herself is speculative, but we know that other people will. If I could, my problem isn't in blocking the name of the case. It's not on this issue. In 2017 years ago, I wrote it. I didn't like the case, but I had to write it because 50 times the case law required it. If we're talking about a class, it's true. Something is statistically almost certainly happened to some members of the class. Mr. Lyons was not himself likely to be subjected to it again. Our case law says that if you're going to apply a sanction, you have to show that it adds to the name plaintiff. If a likely event of it happening to him or her is sufficient, it does not help. If it is statistically likely or even certain, it will happen to some unidentified members of the class in the future. Mr. Morgan, this is in page 608 of the case. You said it's in Juul. Judge Fletcher is asking about specifically the court assessment in these allegations. We're not talking about element one injury in fact, nor are we talking about currently traceable to the judge conduct. But you have to show some likelihood of repressibility to the named plaintiff element. Is there a chance that they will continue to wrongfully delegate data for prospective injunctive relief? The case you sent us, this is repressibility. Yes, Your Honor, they had no problem finding repressibility in the NSA. But I think Judge Fletcher goes to the case that he wrote, and that's why he's asking you. And Your Honor, again, I would stress to you that we need to follow Riverside v. McLaughlin. It was an ad case. Everyone who complained to us, they had the same problem with respect to were they ever going to be arrested again. And it was speculative in that sense, but they said the relation back argument took care of that issue. So there's a couple of things we have in Maricopa County for the severe court decisions, but there's also this wiretap evidence. Most of you have seen it, so you may never know if she gets wiretapped again, unless it's good to see it. And she happens to be a defendant in a case. There are thousands of people that are wiretappers. She knows Maricopa County orders. Every year they give you the information from the administrative offices and courts. And so there's something like 50,000 people last year. Is there a statistical argument that she would be wiretapped again? Yes, depending on her community, depending on the people she hangs around with. So I think it is not speculative. Turning to the merits, Judge, I would like to just make a few comments with respect to the delineation authority. I'd like to observe that you had. Mr. Morgan, let me ask you. I'm assuming that in addition to what I'll call your kind of freestanding preemption argument, that you're also here about 1983, your 1983 claim, and how that harmed the named plaintiff in your lawsuit, as well as the claim under 2520 for statutory damages. Am I correct? Is it? Okay. With respect to the authorization in Title III, Anne Giordano teaches that centralization of policy, policymaking authority, and concrete lines of responsibility are the reasons that limit the people that can apply for or authorize wiretaps. Now, 2518.1 requires that the application state have this authority to make the application and identify the person. It seems to me that nothing would more frustrate to aggression and purpose than to allow the deputy attorneys to go ahead and authorize Anne to apply for wiretaps. That's really the nut of this case in terms of the authorization. It also frustrates me, as the Court's holding in U.S. v. Paris, at least we haven't moved from one institution to the other. In that case, I think the position of the plaintiff in statute requires that the only person who can make the application for a wiretap is the county attorney or somebody operating with all of these powers, and anybody else would be insufficient under 2562. Now, look at what happened in this particular case. It shows that Jennifer Brockle, who is the deputy county attorney, and this is set forth in the county's materials, pages 1 through 3. Jennifer Brockle read the affidavit and found probable cause. Jennifer Brockle made the application for the wiretap. Jennifer Brockle was authorized to make further applications for amendments and extensions. So the plain question is, where is Bill Montgomery, the county attorney? He's nowhere to be found in this case. He signed a form that gave Jennifer Brockle his authority and his power, and then they went to the attorney, and that's not what Congress is doing. I just think that that's not what Congress does. Why does Congress put me out? You know, it's not a procedure, which I think is difficult to specify, but that doesn't necessarily mean it's putting me out to the people. Judge, I think that all of the courts in America agree that Title III is a man-on-the-standard. States are free to do more restrictive provisions, but nothing less than Title III. And one of the problems that I've submitted to the court here is substantial compliance with Title III is inappropriate and insufficient under the minimum standards that are required under Title III. Can you tell me that there are people on the ceiling as well? I looked before, and I realized, too, that, you know, my colleague, Tom, seems to make a pretty good argument with respect to the allegation that the county attorney is supposed to be the one that's in your field, and the federal statute seems to say the responsible person, and if there's a sort of blanket allegation to others, the accountability system goes bad and so on. The ceiling seems to, the ceiling crime under the federal law seems to decide just to preserve accuracy, and in Arizona, they preserve accuracy in some other way. I don't see that the argument for preemption is as strong, so help me out, as to why there's a preemption argument with respect to the ceiling. Yes, I hear. First of all, the Arizona statute does not, it requires that the communications be submitted within 10 days. It has no admissibility provisions, however. The practice is to wait until the end and then submit everything, and that's what we're complaining about here. That means you can have days, months, even years, technically, before those are ever submitted to a judge or ceiling. Now, under preemption, you know, the Supreme Court said, these are the minimum standards that are required under 25-18. And that's what they said, minimum standards. This is what Congress required. Now, if that's the finding of the Arizona, the U.S. Supreme Court, who are willing to challenge that, we can't say that Arizona can't go and say, no, you don't have to follow OHEA rules, and that's what the District Court judge here did. She said, the U.S. Supreme Court is not presumptive of pervasive authority. A court in Massachusetts from 1975 that spent two paragraphs on the issue is what I consider to be persuasive authority. I think that was an abuse of discretion. So I would suggest that under preemption, 25-18 must be followed. That is a basis for admissibility of a wiretap, and that's what Congress determined was required. So I don't think Arizona's free to go in some way in that regard. I would also point out this. If the business was official within 10 days of sealing, decide to do anything other than preserve the record, correct, for pursuit of accuracy. That's to provide knowledge to anybody. My sense is that it's just to look and make sure that the record is accurate. Yes, it is there to make sure the record is accurate, but my suggestion to this Court is it doesn't do a very good job and is not an accepted practice in the federal system. The only other notice is that we have difficulties with the accuracy of these wiretap records. They're going to be on the same length of premises. Judge, do I have any evidence of it? No, and here's the reason why. Arizona has required that defendants show that the record was tampered with and that goes back into the 80s in the cases that we cited. I can't figure it out off the top of my head. But nobody's been able to make that case because how can we possibly know if they tampered with the record? They can't. I mean, they gave us a record that's already tampered with. How am I supposed to prove that it is, too? Okay, thank you. Thank you. Good morning, ma'am, police and court. My name is Kenneth Mamdouh. I'm here on behalf of the defendants. This Court appropriately raised the issue of standing, and particularly with respect to an injunction. It's an easy matter because, as the Court pointed out, the likelihood of any reoccurrence of this situation, you would have to assume that Mr. Young was going to be maintaining any contact, conversation with targets of criminal investigations. The likelihood of that is less probably than the likelihood of getting a traffic ticket in Los Angeles, as Mr. Williams was faced with. Well, no, Mr. Williams was faced with no traffic ticket, but stopping and being subject to a patrol, which is less likely. Yes, although likely, he had to question the possibility of a traffic stop and the possibility of putting a reduce on it, so that it would violate the parole system. The point I'm getting at is that the likelihood in Williams was not merely getting a traffic ticket, but the much greater unlikely, at least in Dallas, being stopped and being subjected to a patrol, so if your standard is unlikely, then, well, why is it that she's more inherently unlikely? And I may have made that point, but to me, that's not such a clear standard. Well, we don't know. You're absolutely right. We don't know. But the common standard is people cannot dissociate who is a criminal. And Ms. Villa was not charged with a crime. She was not brought into court. She did not suffer any consequences because of this situation. At least in the aspect that there was a consequentiality to what occurred with respect to her conduct as a parent, so I suspect it was not an egregious offense to be charged with criminally. The law worked as it was supposed to have worked. There was no reason for a lawsuit. It's somewhat analogous to a person sitting in a restaurant, getting upset in the diner, and the next table over is listening to you to answer your conversation. I'm sure you've seen that Elan F. Arizona is acting unlawfully under federal law, especially as no cost of action or damages. Is that where you're headed? I believe so. Is Elan doing that? No. If someone subjects me to an unlawful wiretap, I think I'm entitled to something under federal law in terms of damages. Well, I think, Dr. O'Hara, the Congress intended these non-participants as targets to have a brief of some lawsuit. I understand. You're not subject to the wiretap? She was not subject to the wiretap. She was caught up in the sense that she had a conversation with the court targets, but she didn't suffer any injury as a result of that. Do you think these are the ‑‑ Well, again, there are communications being captured. Yes, and we don't know anything other than a psychological injury on her part, so I'm not subjecting anything that she suffered. You know, the Congress intended some of those conversations were subject to or are dubbed to have the ability to challenge the wiretap. I don't think that's fair either. It was my idea, but I don't think that's fair. It was your idea. It was my idea, but I don't think that's fair. But people who are non-targets of criminal activities do offer her a new arm, James. That's the situation. Do you think that's true? Well, it may be, but is it consequential enough to be involved in a lawsuit? Or are we to say that the person who had the killing, who was part of the phone conversation and then was fired down, or the person who's beaten, the person who's beat that geek out, is going to be able to sue because it's someone who killed him? I think people have an expectation of privacy and that the one‑to‑one telephone conversations will not be intercepted and listened to by people who are not part of that conversation. You're right. That's why we have all the procedural protections and the statutes and most of the federal laws. James, did you see if those protections don't apply to someone who's not a target of the war again? No, they apply. But the illegality that Congress was trying to fight was to protect the targets of the fire camps. If the law is violated, they suffer terrible consequences of being charged with crimes and having to go to court and defend themselves. And if fire attacks is legal, then they shouldn't have that further consequence. Here we have somebody who suffered no court consequences as a result of his dignity being upset. Right. This is confusing. How did she learn about this? By what? She was advised because she was killed in two parties. One more thing. We're going to take time and we're going to go through the telephone conversations. And they can't immediately be notified if they're going to be deleted. Right. So she's notified that somebody out there was listening to her and she says, and I'll get to this question, she says that was the illegal wiretap. And you're saying even though she was subjected to be listened to under the illegal wiretap, she has nothing? This is part of the situation. Is that possible? It's possible, of course, that damages, if the only possible remedy here is damages because the alcohol at the wire is broken, no injunctive relief available, because we don't have money to pay for the insurance. We'd not go as far as damaging it. Well, how do we do, Your Honor, that that should play gross to the S.I.C. witnesses? She's entitled to damages. I understand that. But there's good faith exemption. And so those who are being sued for damages now, they are entitled to good faith exemption for damage recovery. Yes, Your Honor, and that is? That raises the question, or at least maybe they have good faith exemption to it. Maybe that means that we should be just as unlikely looking at the reasons already given to us. This is why we're not getting these deductions, because we're speaking against the wiretap this time, Ms. Sanchez next time, Ms. Jones next time. It's a different person every time. We can't show likelihood of something. I don't want to get in trouble for no reason. Maybe we can talk about whether or not she's been violated. And then they can look at those other questions, which might turn out to be follow-up damages. But at least we'd have a lawsuit in which we can articulate the consequences. Well, but every person who's the target of a criminal wiretap who gets criminally charged is going to be able to raise that issue. You know, but damage lawsuits, they really are solutionary deductions. They could also raise the issue of injunctive relief. The historical case points out that... Only if someone was not the target. They would have the class-action opportunity as kind of a strategy. They don't care about that. Their primary concern is getting the evidence that was gathered through the wiretap, excluded from evidence. So they have a different attention than the person who was caught up in the wiretap and was not the target. And it may not be as legitimate as possible. Something that could do that. In the historical case, the court pointed out that the generalized grievances are not recognizable in the court. If you consider the case of someone whose conversation was over her, who was not a target, it's being generalized grievance. Yes, absolutely. It's abstract. Yeah, she could show some incredible harm. And maybe she might have the basis for a lawsuit, which is to object and not fear. It's not abstract in the sense that she was specifically captured. Her conversations were specifically captured in the wiretap. Well, the same as the pizza person who's part of their conversation and anybody else that is part of the conversation. That's thousands of conversations in person. So, yeah. The conversation, you know, I don't care if it did, it's in your heart. It's not in your mind. And it's true, Your Honor, it's analogous. It's not, again, close analogous, but that's where we disagree with the Jewell case that was cited by Mr. Morgan. The Jewell case has required contrary analysis because in Jewell, everyone was the intended target. Everyone was under suspicion. Everyone's conversational metaphor was analogous. And in the Isken case, this was not true. She was just an unnecessary part of the wiretap because she was talking with the targeted individuals. And yet, yes, there is more manner of all constitutional standards for standing. This does not mean that it's appropriate to allow her to be able to sue. It's the holding in the case of Orr v. Siblin. Orr v. Siblin. One way or the other, when you get to the merits, is it because she was standing for injunctive relief or because she sued for damages and the damages are available unless maybe there's good faith. So, when you address the constitutional merits in front of a human being, be kind to them. Congress is not trying to create hurdles for states to be able to do more jabs. The state system has laws that model and follow the main procedures of the federal cases. The most amazing thing about this case is, Mr. Borges, if you have a law that the law authorizes the Deputy County Attorneys to authorize the Orr jab, it's a solid. The law authorizes the principal county attorney to authorize the Orr jab, and then you have the early Deputy County Attorneys do the physical paperwork as pointed out by Judge Reinstein. Yes, but the people are actually doing the paperwork. Do they then have to go up the ladder to get approval, or did they just file out the paperwork and say, hey, my judgment, the Orr jab is finished? But, Judge Reinstein pointed out this in the supplemental extortion record, with respect to four different Orr jabs, including the 412 we were talking about, there were separate authorization letters by Mr. Montgomery saying, you are authorized to seek a Orr jab in these situations. In each of those letters, they listed the common names of the crimes and the section numbers that were being investigated. They named specific individuals in the absolute one Orr jab that was going to be targeted. They mentioned the target telephone lines that were going to be intercepted, and the names of the specific assistant Deputy County Attorneys that were authorized to do the paperwork, to carry out the letter authorizing the Orr jab. So there was no delegation authority to authorize Orr jab. There was delegation authority to sign the papers, and from the court, to be able to go on and do it. Is this your argument, your statement, that the federal statute is in play with it? Absolutely. And to follow Mr. Orr jab's argument, where the statute says any county attorney can authorize what he would be saying is that, and you can respond to this in your answer brief, he is saying that the statute says any county, a Deputy County Attorney is authorized to let another Deputy County Attorney decide whether or not to seek a wiretap. And that is certainly not something that would make any sense. If I'm sitting here in my cubicle, why do I need my next door neighbor to tell me that I'm authorized to seek a wiretap if the statute says I'm authorized in any event to seek a wiretap? In fact, the likely county attorney is the only one who does and who can authorize the seeking of a wiretap. This is exactly, also a big point is made as to paragraphs 2 and 125 of 15. The difference between authorization and apply, and the United States v. Smith case pointed out that for the language in the Senate report, for the language of Senator McClellan, who was the principal sponsor, they were only authorizing the principal prosecuting attorney in each county to be able to authorize the appointment to him. And that is consistent with cases in the 2nd Circuit, 3rd Circuit, and 5th Circuit. So, there is not a broad authorization. The House recognizes the county attorney, and that is why this actually happened in this case. And it was described in the paperwork, the signing of the application, the filing of the application, which was designated to four different deputy county attorneys. With respect to the good faith element, that has not been briefed or argued below, but Jessica Ciske in the FOIA consulting group case said the parties will not now be surprised by the majority opinion, which he was concurring in. As he decides a question, they neither briefed or argued, and that wasn't even raised below. So, I agree with Jessica Ciske that there is the opportunity for this court to decide that even if there were a violation, there is a good faith exception to any constitutional violation because the parties have acted appropriately and reasonably in this case. Sure. This circuit has had 120 days. The infunding of documents with the court is appropriate when there is an objectively reasonable explanation for it. There is some hesitancy, period. That was in the FOIA appeals case, I believe. I don't remember the degree set for the delay. I think it was a mistake amongst the attorney's office with the actual transcripts of foreign attempts. And so, I guess the conceivable community says where the federal court allowed four months and more than four months to delay in getting the paperwork filed with the court, that a 10-day limit is necessarily appropriate. And there has been no shortness of any detail when it was any paperwork. The paperwork in this case was filed the next day after the end of the FOIA due. So, for all these reasons, we ask that the industry court dismiss and defer. Thank you. Thank you. Thank you very much, Your Honor. First of all, we have a factual dispute here with respect to what happens on these wiretaps. There is a formal authorization signed by the county attorney one time. In this particular case, there are 14 applications. There are no authorizations for each of the applications for the county attorney. There are 32 separate lines. There are dozens of people who were wiretapped. All of the decisions that were made on who and when and for how long the wiretaps were made by Jennifer Brockley. Mr. Davis, let's look at the record and continue to ask questions that are not only ourselves, which to characterize the issue with respect to unlikelihood and speculation. Your Honor, I represent an innocent person. If you look at the statistics, you will find most of the people who are intercepted in these wiretaps are innocent people. Only a few end up being defendants in the case. It seems to me that it's a difficult constitutional argument to say that innocent people don't have any right to privacy in this country. This statute does not protect simply criminals. It is also designed to protect the innocent public. Justice Long about how my client received notification that her daughter was indicted in this case. She was not informed by the county attorney's office that she had been wiretapped. She was informed by her daughter's attorneys and then later on who found the wiretap at the interception communications and her wiretaps. Good faith exception. Would she have been in the wrong connection if her daughter had not been? Not in my experience, no. But in the judicial system, that's the case. Absolutely. We're faster than most here in Arizona. With respect to the good faith exception, Your Honor, yes, there may be good faith in this situation to protect individual officers from liability, but not security. They are allowing these policies and procedures to go forward. They are allowing the government to do this. I don't think the county can do certain good things in this instance. Would you disagree with them? If they do, then we will have to determine whether there's liability first and then whether there's good faith. You'll disagree not on the individual, but also on the county? With respect to O'Hia Rios, it is objectively reasonable. Just one of my complaints to this is that O'Hia Rios is 27 years old, and the county came in and I briefed and argued his journey in the Superior Court, the discretion motions in this case. They came in and argued complete ignorance with respect to O'Hia Rios. I don't think that's objectively reasonable. They also said that they were ignorant of your decision from this circuit, and romantic. So, where did this circuit found that each individual wiretap must be sealed as it is terminated? How would the faith executive produce an almanac in the district court? No, we never got to court. So, the district court never heard those arguments? No, no. We don't have any briefing on that point in this court either? No, no. With respect to the injunctive, or declaratory relief, I don't know that injunctive relief would be necessary when government tells the other government, don't do this anymore, it's probably not necessary that you have an injunction unless they continue on with practice. We've had that happen in the jails and other places in Arizona since 1870 and some of the other stuff that we do here, or do there, but the declaratory issue, I think that the district court needs to know that it has the power to say that this practice is unconstitutional and if so, then we can't... We may be able to address the ruling in the same fashion under an amendment to the question and I'm not sure you can get your judgment on this issue, but if all you want to know, that's fine. Thank you. I don't have anything further. Thank both sides for your time. I also want you guys to know that as a case, this morning, the Everett and Maricopa County has not submitted for the season and we're not adjourned until tomorrow. Thank you.
judges: W. Fletcher, Rawlinson, Pratt